The Honorable Benjamin H. Settle

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| REBECCA FAUST, | NO. 3:20-cv-05356-BHS |
| Plaintiff, | DEFENDANTS' RESPONSE TO SECOND MOTION FOR TEMPORARY RESTRAINING ORDER |
| v. | |
| JAY INSLEE, Governor of the State of Washington; and CHRIS LIU, Director of Enterprise Services, | NOTED FOR: June 5, 2020 at 10:00 a.m. |
| Defendants. | |

DEFENDANTS' RESPONSE TO
SECOND MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 3:20-cv-05356-BHS

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................ 1

II. FACTUAL BACKGROUND ......................................................................................... 2

    A. COVID-19 and the Outbreak in Washington ...................................................... 2

    B. Washington State's Early Response to COVID-19 .............................................. 4

    C. The Governor's Stay Home – Stay Healthy Order .............................................. 5

    D. Guidance From the Governor's Office ................................................................ 6

    E. The Phased Plan to Ease Restrictions ................................................................. 7

    F. Ms. Faust's Lawsuit and First and Second TRO Motions .................................. 8

III. ARGUMENT ............................................................................................................... 10

    A. Legal Standards ................................................................................................. 11

    B. Ms. Faust is Unlikely to Succeed on the Merits of Her Assembly Claim .............. 11

        1. Ms. Faust lacks Article III standing .................................................. 12

        2. Ms. Faust's assembly claim is not ripe ............................................ 14

        3. Ms. Faust has not exhausted her administrative remedies .............................. 15

        4. The Safe Start – Stay Healthy Proclamation does not infringe Ms. Faust's freedom of assembly ........................................................................ 17

        5. The Stay Home – Stay Healthy Order is constitutional under *Jacobson v. Massachusetts* ................................................................................ 22

    C. Without a TRO, Ms. Faust Would Not Suffer Irreparable Harm .......................... 23

    D. The Balance of Equities and Public Interest Weigh Against a TRO ...................... 23

IV. CONCLUSION ............................................................................................................ 24

DEFENDANTS' RESPONSE TO
SECOND MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 3:20-cv-05356-BHS

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1

**TABLE OF AUTHORITIES**

2

**<u>Cases</u>**

3

*Abbott Labs. v. Gardner*
    387 U.S. 136 (1967) ................................................................................................ 14

4

5

*Am. Civil Liberties Union of Colorado. v. City & Cty. of Denver*
    569 F. Supp. 2d 1142 (D. Colo. 2008) ................................................................... 17

6

*Amato v. Elicker*
    No. 3:20-cv-464, 2020 WL 2542788 (D. Conn. May 19, 2020) ....................... 2, 11

7

8

*Antietam Battlefield KOA v. Hogan*
    No. CV CCB-20-1130, 2020 WL 2556496 (D. Md. May 20, 2020) ............ 10, 17, 20

9

*B.C. v. Plumas Unified Sch. Dist.*
    192 F.3d 1260 (9th Cir. 1999) ............................................................................... 12

10

11

*Benner v. Wolf*
    No. 20-cv-7752020 WL 2564920 (M.D. Pa. May 21, 2020) ................... 10, 18, 19, 20

12

*Calvary Chapel of Bangor v. Mills*
    No. 1:20-CV-00156-NT, 2020 WL 2310913 (D. Me. May 9, 2020) ................... 2, 11

13

14

*Cassell v. Snyders*
    --- F. Supp. 3d ----, No. 3:20-cv-50153, 2020 WL 2112374 (N.D. Ill. May 3, 2020) .......... 11

15

*City of Renton v. Playtime Theatres, Inc.*
    475 U.S. 41 (1986) .................................................................................................. 18

16

17

*Civil Liberties for Urban Believers v. City of Chicago*
    342 F.3d 752 (7th Cir. 2003) .................................................................................. 17

18

*Corrie v. Caterpillar, Inc.*
    503 F.3d 974 (9th Cir. 2007) .................................................................................... 2

19

20

*Cross Culture Christian Ctr. v. Newsom*
    --- F. Supp. 3d ----, No. 2:20-cv-00832-JAM-CKD, 2020 WL 2121111 (E.D. Cal.
    May 5, 2020) ....................................................................................................... 2, 11

21

22

*Employment Div. Dep't of Human Res. of Oregon v. Smith*
    494 U.S. 872 (1990) ................................................................................................ 24

23

*First Pentecostal Church of Holly Springs v. City of Holly Springs Mississippi*
    No. 3:20CV119 M-P, 2020 WL 1978381 (N.D. Miss. Apr. 24, 2020) ............... 11, 24

24

25

*Friends of Danny DeVito v. Wolf*
    --- A.3d ----, No. 68 MM 2020, 2020 WL 1847100 (Pa. Apr. 13, 2020) ............. 11, 20

26

DEFENDANTS' RESPONSE TO
SECOND MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 3:20-cv-05356-BHS

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

*Garcia v. Duarte Reynosa*
   No. C19-01928-RAJ, 2020 WL 363404 (W.D. Wash. Jan. 22, 2020) .................................. 11

*Garcia v. Google, Inc.*
   786 F.3d 733 (9th Cir. 2015) ........................................................................................... 11

*Geller v. de Blasio*, 20-cv-3566
   2020 WL 2520711 (S.D.N.Y. May 18, 2020) ........................................................... passim

*Gent v. CUNA Mut. Ins. Soc'y*
   611 F.3d 79 (1st Cir. 2010) ................................................................................................ 2

*Gish v. Newsom*
   No. EDCV-20-755 JGB (KKX), 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020) ........... 11, 22

*Givens v. Newsom*
   No. 2:20-cv-00852-JAM-CKD, 2020 WL 2307224 (E.D. Cal. May 8, 2020).......... 11, 18, 21

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, of Alameda Cty.*
   415 U.S. 423 (1974)......................................................................................................... 11

*Hale v. Dep't of Energy*
   806 F.2d 910 (9th Cir. 1986) ........................................................................................... 23

*In re Abbott*
   954 F.3d 772 (5th Cir. 2020) ........................................................................................... 22

*Jacobson v. Commonwealth of Massachusetts*
   197 U.S. 11 (1905)....................................................................................................... 2, 22

*King Cty. v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*
   138 Wn.2d 161 (1999)...................................................................................................... 16

*Kokkonen v. Guardian Life Ins. Co. of Am.*
   511 U.S. 375 (1994)......................................................................................................... 12

*Legacy Church, Inc. v. Kunkel*
   --- F. Supp. 3d ----, No. CIV 20-0327 JBSCY, 2020 WL 1905586 (D.N.M. Apr. 17, 2020)................................................................................... 11, 19, 21, 23

*Lighthouse Fellowship Church v. Northam,*
   No. 2:20-cv-204, 2020 WL 2110416 (E.D. Va. May 1, 2020)............................................ 11

*Lujan v. Defs. of Wildlife*
   504 U.S. 555 (1992)......................................................................................................... 12

*Maryville Baptist Church v. Beshear*
   No. 3:20-CV-278-DJH, ---WL--- (W.D. Ky. May 8, 2020)................................................ 11

DEFENDANTS' RESPONSE TO
SECOND MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 3:20-cv-05356-BHS

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

*McCullen v. Coakley*
  573 U.S. 464 (2014)................................................................................. 17

*Miller v. Thurston*
  No. 5:20-CV-05070, 2020 WL 2617312 (W.D. Ark. May 25, 2020) ............................ 19, 20

*Muhammad v. Sec'y of Army*
  770 F.2d 1494 (9th Cir. 1985) ................................................................ 16

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*
  676 F.3d 829 (9th Cir. 2012) ................................................................. 15

*Pierre v. Univ. of Dayton*
  No. 3:15-CV-362, 2015 WL 8567693 (S.D. Ohio Dec. 11, 2015)................................. 23

*Recording Indus. Ass'n of Am. v. Diamond Multimedia Sys., Inc.*
  180 F.3d 1072 (9th Cir. 1999) ................................................................ 23

*Requa v. Kent Sch. Dist. No. 415*
  492 F. Supp. 2d 1272 (W.D. Wash. 2007) ...................................................... 11

*Roberts v. Neace*
  --- F. Supp. 3d ----, No. 2:20-cv-054 (WOB-CJS), 2020 WL 2115358 (E.D. Ky.
  May 4, 2020)................................................................................. 11

*Roberts v. U.S. Jaycees*
  468 U.S. 609 (1984)......................................................................... 21

*Ry. Mail Ass'n v. Corsi*
  326 U.S. 88 (1945).......................................................................... 14

*S. Bay United Pentecostal Church v Newsom*
  19A1044, 2020 WL 2813056 (U.S. May 29, 2020) ............................................... 2

*San Diego Cty. Gun Rights Comm. v. Reno*
  98 F.3d 1121 (9th Cir. 1996) ......................................................... 8, 13, 15

*Santa Monica Food Not Bombs v. City of Santa Monica*
  450 F.3d 1022 (9th Cir. 2006) ............................................................... 2

*Scott v. Pasadena Unified Sch. Dist.*
  306 F.3d 646 (9th Cir. 2002) ................................................................ 15

*Serv. Employee Int'l Union v. City of Los Angeles*
  114 F. Supp. 2d 966 (C.D. Cal. 2000) ........................................................ 17

*Stoianoff v. State of Mont.*
  695 F.2d 1214 (9th Cir. 1983) ............................................................... 12

*Terminiello v. City of Chicago*
  337 U.S. 1 (1949)........................................................................... 22

DEFENDANTS' RESPONSE TO
SECOND MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 3:20-cv-05356-BHS

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

*Thomas v. Anchorage Equal Rights Comm'n*
  220 F.3d 1134 (9th Cir. 2000) ............................................ 1, 12, 13, 14

*Utah Gospel Mission v. Salt Lake City Corp.*
  316 F. Supp. 2d 1201 (D. Utah 2004) .................................... 23

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*
  454 U.S. 464 (1982) ............................................................. 13

*Ward v. Rock Against Racism*
  491 U.S. 781 (1989) ..................................................... 18, 19, 20

*Wehrli v. Cty. of Orange*
  175 F.3d 692 (9th Cir. 1999) ............................................... 17

*Whitlow v. California*
  203 F. Supp. 3d 1079 (S.D. Cal. 2016) .................................. 19

*Winter v. Nat. Res. Def. Council, Inc.*
  555 U.S. 7 (2008) ........................................................... 11, 23

*Younger v. Harris*
  401 U.S. 37 (1971) .............................................................. 13

## **Statutes**

RCW 34.05 ...................................................................... 10, 15

RCW 34.05.010(11)(a) ........................................................ 16

RCW 34.05.501(1) .............................................................. 16

RCW 34.05.510 .................................................................. 16

RCW 34.05.570 ............................................................. 16, 17

RCW 34.05.570(1)(b) .......................................................... 16

RCW 34.05.570(3)(a) .......................................................... 16

RCW 38.52.050 .................................................................... 4

WAC 200-220-100 .............................................................. 15

WAC 200-220-130 .............................................................. 15

WAC 200-220-150 .............................................................. 15

WAC 200-220-300 .............................................................. 15

DEFENDANTS' RESPONSE TO
SECOND MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 3:20-cv-05356-BHS

vi

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1

**<u>Rules</u>**

Fed R. Civ. P. 65(b)(1) ............................................................................................ 11

Fed. Rule Evid. 201(b)(2) ........................................................................................... 2

Fed. Rule Evid. 201(d) ............................................................................................... 2

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DEFENDANTS' RESPONSE TO
SECOND MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 3:20-cv-05356-BHS

vii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

# I.   INTRODUCTION

This Court should deny Rebecca Faust's Second Motion for a Temporary Restraining Order (Second TRO) for the same three reasons that it denied her last Motion for a Temporary Restraining Order (First TRO): she lacks standing, her claim is unripe, and she has not exhausted her administrative remedies. *See* Dkt. #25. Though she now limits her Second TRO to a request to hold an event next week—a rally on June 8, 2020, of up to 2,500 people who may or may not maintain social distancing, wear face coverings, or take any other safety precautions to prevent the spread of the SARS-CoV-2 virus—she still cannot establish the factors in *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) to establish standing and ripeness in her pre-enforcement challenge. Further, she has failed to exhaust her state administrative remedies, which require her to challenge the denial of her rally permit on constitutional grounds in state court. This Court should deny Ms. Faust's Second TRO on these grounds.

Even if the Court reaches the merits, Ms. Faust also cannot establish any of the factors needed for a TRO. She is unlikely to prevail on the merits because the temporary limitation on gatherings in Governor Inslee's most recent Proclamation 20-25.4, the Safe Start – Stay Healthy Proclamation, is a content-neutral time, place, and manner regulation that serves a substantial governmental interest and does not unreasonably limit alternative avenues of communication. She cannot show harm that is irreparable, and the equities and public interest weigh heavily in favor of keeping the public safe by temporarily limiting large gatherings like Ms. Faust proposes. In the three weeks since the Court denied her First TRO, almost 4,000 additional people have contracted COVID-19 in Washington State and over 100 have died, even with the gathering limitations in place.[1]

---

[1] *See* Wash. Dep't of Health, 2019 Novel Coronavirus Outlook (COVID-19), (last updated June 2, 2020), https://www.doh.wa.gov/Emergencies/NovelCoronavirusOutbreak2020COVID19/DataDashboard.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

As the Chief Justice of the United States Supreme Court recently observed in his concurring opinion in denying a church's injunction pending appeal: "The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement. Our Constitution principally entrusts 'the safety and the health of the people' to politically accountable officials of the States 'to guard and protect.' " *S. Bay United Pentecostal Church v Newsom*, 19A1044, 2020 WL 2813056 (U.S. May 29, 2020) (Roberts, J., concurring) (quoting *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 38 (1905)). The Governor's phased reopening plan protects public health based on data and science, and the equities and public interest weigh strongly in the Governor's favor here.

Ms. Faust's desire to hold an event with up to 2,500 people without enforcing social distancing or other safety measures endangers the health of anyone who attends the event and anyone they later encounter. The Court should deny her Second TRO.

## II.   FACTUAL BACKGROUND[2]

### A.   COVID-19 and the Outbreak in Washington

Since December 2019, COVID-19 has swept the globe. The virus—SARS-CoV-2—has infected over 5.2 million people and caused over 337,000 deaths worldwide.[3] More than 1.8

---

[2] This section relies on facts from the declarations of Kathy Lofy (Dkt. #21) and David Postman (Dkt. #22) and the exhibits attached to those declarations filed with the Defendants' Response to Ms. Faust's First TRO motion, as well as judicially noticeable facts that appear on government websites and in government publications. *See* Fed. Rule Evid. 201(b)(2), (d); *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 978 n.2 (9th Cir. 2007) (taking judicial notice of a government publication); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (taking judicial notice of public records that "can be accessed at Santa Monica's official website"); *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of information concerning the transmission of Lyme Disease from the CDC website); *see also Amato v. Elicker*, No. 3:20-cv-464, 2020 WL 2542788, at *1 (D. Conn. May 19, 2020) (judicial notice of Governor's orders about COVID-19); *Geller v. de Blasio*, 20-cv-3566, 2020 WL 2520711, at *2 n.1 (S.D.N.Y. May 18, 2020) (taking judicial notice of City's public health statistics); *Calvary Chapel of Bangor v. Mills*, No. 1:20-CV-00156-NT, 2020 WL 2310913, at *4 n.10 (D. Me. May 9, 2020) (taking judicial notice of information on state agency's website); *Cross Culture Christian Ctr. v. Newsom*, --- F. Supp. 3d ----, No. 2:20-cv-00832-JAM-CKD, 2020 WL 2121111 (E.D. Cal. May 5, 2020) (taking judicial notice of government documents related to COVID-19).

[3] World Health Organization, Coronavirus disease 2019 (COVID-19) Situation Report – 125, May 24, 2020, https://www.who.int/docs/default-source/coronavirus/situation-reports/20200524-covid-19-sitrep-125.pdf?sfvrsn=80e7d7f0_2

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

million cases and 106,000 deaths have occurred in the United States.[4] In Washington State, more than 22,000 people have contracted COVID-19 and at least 1,135 have died.[5]

The SARS-CoV-2 virus, which causes COVID-19, is a coronavirus not previously identified in humans. Dkt. #21 ¶ 6. It is highly contagious and potentially fatal. *Id.* ¶¶ 6–7. Seniors and persons with underlying medical conditions are most vulnerable to serious complications and death. *Id.* ¶ 7.

COVID-19 spreads primarily through close person-to-person contact through respiratory droplets produced when an infected person coughs, sneezes, or talks. *Id.* ¶ 6. There can be a lag of up to 14 days between the time of exposure and the onset of symptoms.[6] Asymptomatic carriers may spread the virus, so an infected person may spread COVID-19 without any indication he or she is a carrier. *Id.* For every confirmed COVID-19 case there are as many as 19 undetected cases. Dkt. #21 ¶ 17.

On January 21, 2020, the Washington State Department of Health (DOH) announced a case of COVID-19 in Snohomish County. Dkt. #21 ¶ 4. In late January, the World Health Organization and U.S. Department of Health and Human Services declared the outbreak a "public health emergency." *Id.* ¶ 5. Additional COVID-19 cases in Washington emerged the next month—including a cluster at a Kirkland nursing home. *Id.* ¶ 4. On February 29, Washington health officials announced what was then considered the country's first COVID-19 death. *Id.* In late February and into March, daily new COVID-19 cases increased dramatically in Washington, as Figure 1 illustrates.

---

[4] Centers for Disease Control and Prevention (CDC), Coronavirus Disease 2019 (COVID-19), Cases in the U.S. (last updated June 3, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

[5] Wash. Dep't of Health, 2019 Novel Coronavirus Outlook (COVID-19), (last updated June 2, 2020), https://www.doh.wa.gov/Emergencies/NovelCoronavirusOutbreak2020COVID19/DataDashboard.

[6] *See, e.g.*, Symptoms of Coronavirus, Centers for Disease Control (May 26, 2020), https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html; Monica Gandhi, *et al.*, *Asymptomatic Transmission, the Achilles' Heel of Current Strategies to Control Covid-19*, N.E. J. of Med., Apr. 24, 2020, https://www.nejm.org/doi/full/10.1056/NEJMe2009758

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 20-cv-00599

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1

**Figure 1: Washington State COVID-19 Epidemiological Curve, June 2, 2020**[7]



B. **Washington State's Early Response to COVID-19**

On February 29, 2020, the Governor issued Proclamation 20-05, , declaring a State of Emergency in Washington due to COVID-19. Dkt. #22 ¶ 4; *Id.* at 11; *see generally* RCW 38.52.050 (governor's emergency powers). The Governor has issued over 70 proclamations amending Proclamation 20-05, directing the State's emergency mitigation measures and other responses to COVID-19. Adopted to meet rapidly "evolving circumstances in light of new data and scientific analysis," and in consultation with the DOH and other public health experts, the State's mitigation measures grew stricter as COVID-19 cases and deaths accelerated and projections became more dire. Dkt. #22 ¶¶ 5, 18. They included: prohibiting gatherings of 250 people or more—and, later, 50 or more; permitting smaller gatherings only if individuals complied with Centers for Disease Control (CDC) and DOH social distancing and sanitation guidelines; closing schools, colleges, and universities; prohibiting gatherings of any size in "public venues," including restaurants, gyms, private clubs, faith-based organizations, and any "other similar venues." *Id.* ¶¶ 7–12.

[7]   DOH, COVID-19 Data Dashboard (last updated May 10, 2020), https://www.doh.wa.gov/Emergencies/NovelCoronavirusOutbreak2020COVID19/DataDashboard. DOH notes that "[i]llnesses from the last 4 to 7 days may not yet be reported." *Id.*

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

Despite Washington's early and aggressive mitigation strategies, in mid-March, the state had the nation's highest absolute number of COVID-19 cases (and the highest or among the highest per capita). Dkt. #21 ¶ 13. One of the state's worst outbreaks came at a Mount Vernon church, when a March 10, 2020 choir practice tragically resulted in 45 infections, three hospitalizations, and two deaths in a relatively rural community—despite social distancing precautions. *See* Richard Read, *A choir decided to go ahead with rehearsal. Now dozens of members have COVID-19 and two are dead*, L.A. Times, Mar. 29, 2020, https://www.latimes.com/world-nation/story/2020-03-29/coronavirus-choir-outbreak. This was but one of many examples around the country of major COVID-19 outbreaks at religious gatherings.[8]

## C.    The Governor's Stay Home – Stay Healthy Order

On March 23, 2020, the Governor issued Proclamation 20-25, the Stay Home – Stay Healthy Order. "[T]he worldwide COVID-19 pandemic," the Proclamation declares, "continues to threaten the life and health of our people . . . and remains a public disaster affecting life, health, property or the public peace." Dkt. #22 at 41. The Stay Home – Stay Healthy Order states that every person in the state "shall immediately cease leaving their home or place of residence except: (1) to conduct or participate in essential activities, and/or (2) for employment in essential business services." *Id.* at 43 (emphasis omitted). "Essential activities" are strictly limited to (1) "[o]btaining necessary supplies and services for family or household members"; (2) "activities essential for . . . health and safety," such as "seeking medical or behavioral health" services or supplies; (3) "[c]aring for a family member, friend, or pet in another household or residence" or "transport[ing]" them "for essential health and safety activities"; and (4) "outdoor

---

[8] *See, e.g.*, Sharon Otterman & Sarah Maslin Nir, *New Rochelle, Once a Coronavirus Hot Spot, May Now Offer Hope*, N.Y. Times, Mar. 27, 2020, https://www.nytimes.com/2020/03/27/nyregion/new-rochelle-coronavirus.html; Bailey Loosemore & Mandy McLaren, *Kentucky county 'hit really, really hard' by church revival that spread deadly COVID-19*, Louisville Courier J., Apr. 2, 2020, https://bit.ly/2XkKCnd; Hilda Flores, *One-third of COVID-19 cases in Sac County tied to church gatherings, officials say*, KCRA (Apr. 1, 2020), https://bit.ly/2XlCpPu; Anna Christianson & Tiffany Littler, *Gov. Kelly issues executive order to limit church gatherings, funerals*, KSNT, Apr. 7, 2020, https://bit.ly/3bZV0F5; *see also* Dkt. #21 ¶ 6; Youjin Shin, et al., *How a South Korean church helped fuel the spread of the coronavirus*, Wash. Post, Mar. 25, 2020, https://www.washingtonpost.com/graphics/2020/world/coronavirus-south-korea-church/.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1  exercise activities," provided that "appropriate social distancing practices are used." *Id.*
2  (emphasis omitted).

3  　　The Stay Home – Stay Healthy Proclamation defines "essential business services" as
4  work either for a business identified in the State's Essential Critical Infrastructure Workers list
5  (Essential Workers list) or "carrying out minimum basic operations . . . for a non-essential
6  business." *Id.* The Essential Workers list sets forth essential workers in 13 business sectors
7  "needed to maintain continuity of operations . . . critical to public health and safety, as well as
8  economic and national security." *Id.* at 46.

9  　　The Stay Home – Stay Healthy Order ordered "[a]ll people in Washington State" to
10 "immediately cease participating in all public and private gatherings and multi-person activities
11 for social, spiritual and recreational purposes, regardless of the number of people involved." *Id.*
12 at 44 (emphasis omitted). Such activity "includes, but is not limited to, community, civic, public,
13 leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers;
14 and similar activities," as well as "planned wedding and funeral events." *Id.* The Stay
15 Home – Stay Healthy Order was to remain in effect until April 6, 2020. *Id.* at 43. The Governor
16 later extended the Stay Home – Stay Healthy Order to expire on May 4, 2020, and then on
17 May 31, 2020. *Id.* at 62, 85.

18 **D.　　Guidance From the Governor's Office**

19 　　The Governor and his Office have provided guidance and directives to facilitate
20 compliance with—and alleviate the burdens attendant in—the Stay Home – Stay Healthy Order.
21 The Governor has issued amendatory proclamations to, for example, suspend driver license
22 expiration dates, Proclamation 20-41, and prohibit certain wage garnishments, Proclamation
23 20-49.[9] The Governor's Office has received—and responded to—hundreds of thousands of
24 inquiries regarding COVID-19 or the Proclamation. *Id.* ¶ 18.

25

26 　　[9] For all the Governor's proclamations, see Wash. Gov. Jay Inslee, Proclamations, https://www.governor.
wa.gov/office-governor/official-actions/proclamations.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

**E.      The Phased Plan to Ease Restrictions**

After a month, the Proclamation's unprecedented mitigation measures had begun to yield positive results. By April 29, 2020, state health officials had observed a "falling disease burden" in the state as measured by the lower rates of COVID-19 cases, hospitalizations, and deaths, improved public health modeling projections, and adherence to physical distancing requirements. The situation remained precarious due to limited "testing capacity and availability," a continuing "risk to vulnerable populations," and limited isolation and quarantine ability.[10]

However, favorable trends led the Governor on April 29, 2020, to amend the Stay Home – Stay Healthy Order to relax some of the restrictions on outdoor recreational activities, including hunting, fishing, boating, golfing, and day-use activities at public parks and public lands. Dkt. #22 at 72. Participants must "fully comply with . . . social distancing and coronavirus related hygiene requirements," *id.*, which prohibit "[g]atherings" and provide that "[o]nly members of the same household may travel and recreate together," *id.* at 75. Recreants must "[k]eep six feet between individuals outside your immediate household" during outdoor recreation activities. *Id.* On May 4, 2020, the Governor issued Proclamation 20-25.3 and formally set forth a phased reopening plan, relaxing certain restrictions in the current Phase I. *Id.* at 82.[11] The Governor's Proclamation 20-25.3 expired on May 31, 2020.

Effective June 1, 2020, the Governor issued Proclamation 20-25.4, the Transition from Stay Home – Stay Healthy to Safe Start – Stay Healthy, a phased reopening plan that applies on a county by county basis. https://www.governor.wa.gov/sites/default/files/20-25.4%20-%20 COVID-19%20Safe%20Start.pdf. Proclamation 20-25.4 stated that Proclamation 20-05 and all

---

[10] Wash. State COVID-19 Risk Assessment Dashboard, https://coronavirus.wa.gov/what-you-need-know/covid-19-risk-assessment-dashboard.

[11] Proclamation 20-25.3 allows (i) counties with populations of 75,000 people or fewer and without COVID-19 cases in the past three weeks to request exemptions; (ii) "drive-in" religious services with "one household per vehicle"; and (iii) "additional low-risk activities" subject to "industry specific requirements" as well as DOH "social distancing and hygiene requirements," including: landscaping, vehicle and vessel sales; pet walking; retail (curbside pick-up only); and car washes. Dkt. #22 at 85-86.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

of its amendments remained in effect as otherwise amended until July 1, 2020. *Id.* at 3-5. On June 1, 2020, each county began in its current phase, but could apply to the Secretary of Health to move to the next phase based on how the county's data for key metrics compared to targets and their ability to respond to situations that may arise in their county, including outbreaks, increased hospitalizations or deaths, health system capacity, and other factors. Safe Start Washington, Phased Reopening County-By-County, available at https://www.governor.wa.gov/sites/default/files/SafeStartPhasedReopening.pdf.

On May 27, 2020, Thurston County moved to Phase II. https://www.thurstoncountywa.gov/phss/Pages/coronavirus.aspx (last visited June 4, 2020). Under Phase II, gatherings of "no more than 5 people outside your household per week" are permitted. *Id.* at 10; Dkt. #22 at 95.

**F.    Ms. Faust's Lawsuit and First and Second TRO Motions**

In May, Ms. Faust filed this lawsuit, seeking the Court to enjoin Proclamation 20-25, Proclamation 20-25.1 and "any order, proclamation, law, regulation, or policy, of any sort, placing plaintiff under isolation, quarantine, or similar restriction(s), however labeled, including any stay-at home or shelter-in-place order." Dkt. #1-1 at 9. She further asks that "gatherings and peaceful assemblies, both public and private, without threat of punishment" be allowed. *Id.* at 9. Her Complaint and Request for Injunction asks to hold a "Rally of Rights" for as many people "as may wish to participate." *Id.* at 8. She seeks $50,000 per year in monetary damages. *Id.* at 9.

On May 20, 2020, this Court denied Ms. Faust's First TRO because she lacked standing, her claims were not ripe, and she had failed to exhaust administrative remedies. Dkt. #25 at 3. The Court noted that Ms. Faust "generally challenges numerous aspects of Governor Inslee's proclamations[.]" but that her alleged harms " ' amount to no more than a "generalized grievance" shared in substantially equal measure by . . . a large class of citizens, and thus do not warrant the exercise of jurisdiction.' " *Id.* at 3–4 (quoting *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1131–32 (9th Cir. 1996) (internal quotations omitted)). Regarding the proposed rally on June 8, 2020, the Court noted that she had failed to request a permit:

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

First, Faust concedes that she has not filed an application for her intended June 8, 2020 rally at the State Capit[o]l. Without an actual denial of a permit application and appeal, Faust fails to establish any actual injury and violation of a constitutional right. Defendants concede that citizens may enjoy public lands as long as they maintain six feet between individuals outside the citizen's immediate household. If Faust's idea of recreating on public lands involves protesting at the State Capit[o]l, then it seems like she could as long as the land is open to the public and she follows the physical distancing requirements. However, unless and until Faust seeks a permit and Defendants provide her actual reasons why her permit is rejected, the Court has nothing to review.

Dkt. #25 at 3.

On May 20, 2020, Ms. Faust applied for a permit for her June 8, 2020 rally. Dkt. #27 ¶ 3. In her online permit application, she estimated that 2,500 people would attend the event. Dkt. #27-1 at 1. She stated in her application that, "[i]n light of Covid-19, I am willing to encourage 6' distancing between people from different households at event, if you request/desire, but cannot enforce." *Id.* at 2. On May 21, 2020, Washington State Department of Enterprise Services (DES) conditionally approved her permit. *Id.* The approval noted that her permit could be cancelled, depending on whether the Governor's Order was extended beyond May 31, 2020. *Id.*[12]

On June 1, 2020, DES notified Ms. Faust that it had cancelled all permitted events on the Capitol Campus as of June 1, 2020 through July 8, 2020, "as part of the regional effort to slow the spread of COVID-19 by limiting gatherings, and to comply with recommendations and directives from the Governor's Office and Thurston County and Washington State's Department of Health." Dkt. #29-2; Second Declaration of Tomy Mollas (Second Mollas Decl.) ¶ 3.

Ms. Faust appealed the permit denial to Director Chris Liu. Dkt. #29-3. Director Liu denied the appeal based on Proclamation 20-25.4 and informed Ms. Faust that she had "the right to judicial review of this denial." Dkt. #29-4.

Ms. Faust filed this Second TRO seeking to hold the "Rally for Rights" on June 8, 2020, and to prevent Defendants from "intimidating or penalizing her or any guest speaker or attendee

---

[12] On May 27, 2020, Defendants moved to dismiss Ms. Faust's claims. Dkt. #26. That Motion is pending.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    whom she invites (including members of the public) for their travel to and from, attendance, or

2    participate in, such rally." Dkt #29 at 2.

3                                    **III.    ARGUMENT**

4          For four reasons, the Court should deny Ms. Faust's Second TRO. First, Ms. Faust lacks

5    Article III standing to assert this pre-enforcement challenge to the gathering restrictions in

6    Proclamation 20-25.4, the Safe Start – Stay Healthy Proclamation. Her claim is also unripe.

7    Second, Ms. Faust is unlikely to prevail on the merits of her First Amendment freedom of

8    assembly claim. Her claim fails for multiple reasons, including because the Stay Home – Stay

9    Healthy Order (i) is content- and viewpoint-neutral; (ii) is narrowly tailored to serve substantial

10   government interests; and (iii) leaves ample alternative channels for Ms. Faust's June 8, 2020,

11   "Rally for Rights." To the extent she is asserting a right of association rather than speech, she is

12   also unlikely to prevail because the Stay Home – Stay Healthy Order (i) serves compelling state

13   interests; (ii) unrelated to the suppression of ideas; and (iii) that cannot be achieved through

14   means significantly less restrictive of associational freedoms. Third, Ms. Faust provides no

15   evidence that she will be irreparably harmed by the Stay Home – Stay Healthy Order absent a

16   TRO or by pursuing her right to an administrative remedy under Washington's Administrative

17   Procedures Act (APA), RCW 34.05. Fourth, the balance of equities and public interest favor the

18   Governor because (i) Ms. Faust has not articulated any personal harm she would suffer from the

19   Proclamation since all other Washingtonians are subject to the restrictions on gatherings and

20   (ii) Ms. Faust's request to hold a rally of up to 2,500 people without the ability to ensure

21   sanitation and social distancing could advance the spread of COVID-19. This Court should deny

22   Ms. Faust's Second TRO and follow the growing consensus of courts rejecting First Amendment

23   challenges to state and local stay-home orders during this pandemic.[13]

24          ───────────────────
        [13] A growing consensus of courts have rejected First Amendment challenges, including on assembly
25   grounds, to state and local restrictions on gathering in stay-home orders. *Benner v. Wolf*, No. 20-cv-7752020 WL
     2564920 at *4 (M.D. Pa. May 21, 2020) (denying TRO for alleged violation of First Amendment because Petitioners
26   were "unable to leave their homes and cannot gather in large groups"); *Antietam Battlefield KOA v. Hogan*, No. CV
     CCB-20-1130, 2020 WL 2556496, at *10 (D. Md. May 20, 2020) (denying TRO; free exercise, speech, and

## A.   Legal Standards

A TRO is "an extraordinary remedy which is granted only sparingly." *Requa v. Kent Sch. Dist. No. 415*, 492 F. Supp. 2d 1272, 1283 (W.D. Wash. 2007). Its purpose is to "preserv[e] the status quo and prevent[] irreparable harm." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, of Alameda Cty.*, 415 U.S. 423, 439 (1974). The same standard applicable to preliminary injunctions governs TROs. *Garcia v. Duarte Reynosa*, No. C19-01928-RAJ, 2020 WL 363404, at *1 (W.D. Wash. Jan. 22, 2020). Under that standard, Ms. Faust must make a "clear showing" that (1) she is likely to succeed on the merits; (2) in the absence of a TRO, she would likely suffer irreparable harm; (3) the balance of equities tips in her favor; and (4) a TRO is in the public interest. Fed R. Civ. P. 65(b)(1); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## B.   Ms. Faust is Unlikely to Succeed on the Merits of Her Assembly Claim

The first *Winter* factor—likelihood of success on the merits—is "the most important." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Ms. Faust has not satisfied her heavy burden, for it is unlikely that she would succeed on her assembly claim.

---

assembly claims); *Amato*, 2020 WL 2542788, at *13 (denying TRO; free association and assembly claims); *Geller v. de Blasio*, No. 20-cv-3566 (DLC) 2020 WL 2520711, at *2 n.1 (S.D.N.Y. May 18, 2020) (denying TRO; free assembly claim to protest Governor's orders); *Calvary Chapel of Bangor*, 2020 WL 2310913, at *9 (denying TRO; free exercise, speech, and assembly claims); *Givens v. Newsom*, No. 2:20-cv-00852-JAM-CKD, 2020 WL 2307224 at *6 (E.D. Cal. May 8, 2020) (denying TRO to hold protest and rally at state capitol; free exercise, speech, and assembly claims); *Cross Culture Christian Center*, 2020 WL 2121111 at *8 (free exercise); *Roberts v. Neace*, --- F. Supp. 3d ----, No. 2:20-cv-054 (WOB-CJS), 2020 WL 2115358 (E.D. Ky. May 4, 2020) (denying TRO; free exercise claim); *Cassell v. Snyders*, --- F. Supp. 3d ----, No. 3:20-cv-50153, 2020 WL 2112374 (N.D. Ill. May 3, 2020) (same); *Lighthouse Fellowship Church v. Northam*, No. 2:20-cv-204, 2020 WL 2110416 (E.D. Va. May 1, 2020) (denying TRO; free exercise, speech, and assembly claims); *Gish v. Newsom*, No. EDCV-20-755 JGB (KKX), 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020), *injunction pending appeal denied by* No. 2—55445, --- F.3d ----, --- WL --- (9th Cir. May 7, 2020) (same); *Legacy Church, Inc. v. Kunkel*, --- F. Supp. 3d ----, No. CIV 20-0327 JB\SCY, 2020 WL 1905586 (D.N.M. Apr. 17, 2020) (denying TRO; free exercise and assembly claims); *Friends of Danny DeVito v. Wolf*, --- A.3d ----, No. 68 MM 2020, 2020 WL 1847100 (Pa. Apr. 13, 2020) (denying emergency relief; speech and assembly claims); *see also First Pentecostal Church of Holly Springs v. City of Holly Springs Mississippi*, No. 3:20CV119 M-P, 2020 WL 1978381, at *24 (N.D. Miss. Apr. 24, 2020) (denying TRO motion raising free exercise, speech, and assembly claims; though city agreed to allow drive-in church services, "this court is considerably less sympathetic to claims . . . to hold indoor church services . . . .") (granting injunction allowing in-person religious services); *but see Maryville Baptist Church v. Beshear*, No. 3:20-CV-278-DJH, ---WL--- (W.D. Ky. May 8, 2020) (granting injunction allowing in-person religious services).

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1        **1.      Ms. Faust lacks Article III standing**

2        Ms. Faust lacks standing for two reasons. First, she has not shown that she "suffered an

3   injury in fact" that is both "(a) concrete and particularized, and (b) actual or imminent, not

4   conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and

5   internal quotation marks omitted). The burden of establishing standing rests with the party

6   seeking to invoke this Court's jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

7   375, 377 (1994). "[F]ederal courts are required sua sponte to examine jurisdictional issues such

8   as standing." *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999). Ms. Faust

9   asserts no harm unique to her as distinct from any other Washingtonian who wishes to hold a

10  large public gathering. *See* Dkt. #29 at 2-4.

11       Second, a person wishing to challenge a law before it is enforced "must demonstrate a

12  genuine threat that the allegedly unconstitutional law is about to be enforced against him."

13  *Stoianoff v. State of Mont.*, 695 F.2d 1214, 1223 (9th Cir. 1983). The mere existence of a law,

14  which may or may not ever be applied to a plaintiff, is not enough to create a case or controversy.

15  *Id.*

16       The test in this circuit for standing in pre-enforcement challenges is clear: To avoid

17  resolving hypothetical disputes, a plaintiff must show "a genuine threat of imminent

18  prosecution." *Thomas*, 220 F.3d at 1139 (en banc). Three factors require consideration:

19  "[1] whether the plaintiff[] [has] articulated a 'concrete plan' to violate the law in question,

20  [2] whether the prosecuting authorities have communicated a specific warning or threat to

21  initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged

22  [law]." *Id.* No single factor is dispositive, and all should be considered. *See, e.g., id.* at 1139–41.

23  Ms. Faust meets none.

24       First, Ms. Faust does not allege that she has a "concrete plan" to violate Proclamation

25  20-25.4's current restrictions on gatherings. She would like to hold a rally of up to 2,500 people,

26  but she has not received a permit for the rally, and she has not alleged that she plans to go forward

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599                          12                    ATTORNEY GENERAL OF WASHINGTON
                                                                     Complex Litigation Division
                                                                     800 5th Avenue, Suite 2000
                                                                     Seattle, WA 98104-3188
                                                                        (206) 474-7744

1    and hold an unpermitted rally that would violate Proclamation 20-25.4. *See* Dkt. #29 at 2. This

2    is not a sufficiently concrete plan under the first *Thomas* factor.

3         Second, Ms. Faust does not allege that any authority has specifically threatened to

4    commence proceedings against her, precluding her from satisfying the second factor. *Thomas*,

5    220 F.3d at 1139; *see also San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1127 ("[P]laintiffs do

6    not identify even a general threat made against them."). *See Younger v. Harris*, 401 U.S. 37, 42

7    (1971) ("[P]ersons having no fears of state prosecution except those that are imaginary or

8    speculative, are not to be accepted as appropriate plaintiffs").

9         Third, Ms. Faust has not identified an enforcement measure taken against anyone holding

10   events or assemblies. Evidence in the record shows that there have been dozens of unpermitted

11   rallies and events at the State Capitol, with no arrests made. Dkt. #27. ¶ 6; Second Mollas Decl.

12   ¶ 4. Ms. Faust does not show a history of past prosecution or enforcement of the Governor's

13   proclamations to rallies at the State Capitol. Ms. Faust lacks standing and thus cannot prevail on

14   any claim.

15        Even if Ms. Faust could show Article III standing, which she cannot, the Court should

16   deny her Second TRO on prudential standing grounds. The courts decline to find standing on

17   prudential grounds when asked to adjudicate "abstract questions of wide public significance"

18   that amount to "generalized grievances" shared by many members of the public. *See, e.g., Valley*

19   *Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464,

20   474-75 (1982). So when plaintiffs allege "no more than a 'generalized grievance' shared in

21   substantially equal measure by . . . a large class of citizens," the claims fail to merit the exercise

22   of jurisdiction. *San Diego Cty. Gun Rights Comm.*, 98 F.3d at 1131–32. That is the case here:

23   Ms. Faust's grievances about not being able to assemble at a rally are not specific to her. All

24   Washingtonians are temporarily sacrificing the ability to gather to protect the public's health.

25   This shared sacrifice is the type of generalized grievance that does not merit exercise of this

26   Court's jurisdiction on prudential grounds.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

### 2.   Ms. Faust's assembly claim is not ripe

Ms. Faust's claim also fails on ripeness grounds. Where standing ends and ripeness begins is not as easy task. *Thomas*, 220 F.3d at 1138. The focus of a ripeness inquiry is "primarily temporal in scope" so "ripeness can be characterized as standing on a timeline." *Id.* Whether the question is one of standing or ripeness, the Constitution mandates that courts will not exercise jurisdiction unless there is a constitutional "case or controversy," that presents issues that "definite and concrete, not hypothetical or abstract." *Id.* (quoting *Ry. Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945)). The ripeness doctrine is "designed to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.' " *Thomas*, 220 F.3d at 1138 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).

Ripeness contains both a constitutional and a prudential component. *Thomas*, 220 F.3d at 1138. The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, coincides with standing's injury in fact prong. *Id.* Even if the Court finds that Ms. Faust presents a ripe controversy, it may decline to consider it on prudential ripeness grounds. *Id.* at 1141. This is guided by two overarching considerations: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.*

To establish that a pre-enforcement challenge is ripe, a plaintiff must satisfy the same test required to show injury in fact for standing purposes in such a challenge. *Id.* at 1138. That is, to establish Article III ripeness, Ms. Faust must show that she faces a "genuine threat of imminent prosecution." *Id.*

For the reasons articulated above, application of the three *Thomas* factors supports finding that Ms. Faust's generalized claims against the Safe Start – Stay Healthy Order are not ripe. She has no concrete plan to hold an unpermitted rally and thus violate the law, no one has threatened her with prosecution if she did so, and she presents no evidence of enforcement against unpermitted rallies.

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

Ms. Faust also cannot establish prudential ripeness. The issues in this case are not fit for judicial decision because Ms. Faust challenges the stay-home order on constitutional grounds (freedom of assembly) before it has been enforced against her. "[P]rudential considerations of ripeness are amplified where constitutional issues are concerned," *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002), and courts routinely decline to decide constitutional challenges where there are no facts or applications of the law upon which the court can base its decision, s*ee Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 837 (9th Cir. 2012) ("Courts have regularly declined on prudential grounds to review challenges to recently promulgated laws or regulations in favor of awaiting an actual application of the new rule.").

There is also no hardship to Ms. Faust in delaying judicial review. Just like the plaintiffs in *San Diego County Gun Rights Committee*, Ms. Faust has not been charged with violating the Proclamation. 98 F.3d at 1132. She does not "face a credible threat of prosecution." *Id.* at 1132. Therefore, as in *San Diego County Gun Rights Committee*, "any hardship caused by [a] decision to delay resolution of plaintiffs' claims does not justify the exercise of jurisdiction." *Id.* Ms. Faust cannot establish prudential ripeness.

### 3. Ms. Faust has not exhausted her administrative remedies

With regard to her proposed June 8, 2020 rally, Ms. Faust has not exhausted her administrative remedies, so this Court should decline the extraordinary remedy of granting her TRO. *See* WACs 200-220-100, -130, -150. Though DES entered a final order denying her permit (*see* WAC 200-220-150), she has the right to judicial review under the APA, RCW 34.05.[14] She should seek that relief first.

---

[14] People have the right to exercise their rights to free speech and assembly at the capitol buildings and grounds, subject to reasonable time, place, and manner limits. WAC 200-220-300. A permit is required for free speech and assembly activities involving twenty-five or more people in capitol buildings or more than seventy-five people on the capitol grounds, and for all private or commercial activities. WAC 200-220-100. DES issues the permit or denies the application within two working days. WAC 200-220-130. If the permit application is denied, an appeal may be submitted to the director of DES within five working days. WAC 200-220-150. The director

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

The APA "establishes the exclusive means of judicial review of agency action," except: (1) where the sole issue in the litigation is a claim for money damages and the agency in question does not have statutory authority to determine the claim; (2) ancillary procedural matters before the reviewing court such as intervention, class actions, consolidation, etc.; and (3) "to the extent that de novo or jury trial review of agency action is expressly authorized by provision of law." RCW 34.05.510; *see also King Cty. v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 138 Wn.2d 161, 178 (1999) ("The APA  provides the exclusive means for seeking judicial review of agency action").

None of these exceptions applies, so the APA is Ms. Faust's exclusive means to challenge the permit denial. The first exception does not apply because Ms. Faust requests injunctive relief so the "sole issue" is not a "claim for money damages." RCW 34.05.501(1). The second exception does not apply because this case does not involve an ancillary procedural matter. The third exception also does not apply because this Court's review is not expressly authorized by provision of law.

The judicial review provision of the APA allows a party to raise constitutional and other various claims when challenging an agency's order. RCW 34.05.570(3)(a) (providing for judicial relief if "the [agency] order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied"); *see also* RCW 34.05.010(11)(a) (defining "order"). The validity of a state agency action is determined in accordance with the APA's judicial review provisions. RCW 34.05.570(1)(b). Ms. Faust must pursue her administrative remedies before seeking a TRO.

Courts ordinarily require exhaustion of an agency's remedies before they will review an administrative decision. *Muhammad v. Sec'y of Army*, 770 F.2d 1494, 1495 (9th Cir. 1985). A party's failure to exhaust administrative remedies is excused in certain limited circumstances:

issues decision within three days, which is DES's final decision. *Id.* That decision can be appealed under the Administrative Procedure Act. *See* RCW 34.05.570.

DEFENDANT'S RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER NO.  20-cv-00599

16

(1) if the remedies do not provide an opportunity for adequate relief; (2) if the petitioner will suffer irreparable harm if compelled to seek administrative relief; (3) if administrative appeal would be futile; or (4) if substantial constitutional questions are raised. *Id.* No circumstances negating the exhaustion requirement exist here. *See also Wehrli v. Cty. of Orange*, 175 F.3d 692, 694 (9th Cir. 1999) (plaintiffs "cannot obstruct the preclusive use of the state administrative decision simply by foregoing [their] right to appeal [to state court]").

Ms. Faust cannot establish this limited exception. Here, judicial review under the APA gives her an opportunity for adequate relief because she can challenge the constitutionality of the gathering requirement in state superior court. *See* RCW 34.05.570. She will not suffer irreparable harm if she must seek judicial review, and the application is not futile as she can assert her constitutional argument. Finally, because her constitutional claims fail, as explained in the next section, no substantial constitutional questions are raised.

### 4.     The Safe Start – Stay Healthy Proclamation does not infringe Ms. Faust's freedom of assembly

Ms. Faust is also unlikely to succeed on the merits of her undeveloped claim that the Safe Start – Stay Healthy Proclamation violates her right to assembly. The government can place reasonable restrictions on the time, place, or manner of where people assemble to engage in protected speech. *McCullen v. Coakley*, 573 U.S. 464, 477 (2014); *see also Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 765 (7th Cir. 2003); *accord Am. Civil Liberties Union of Colorado. v. City & Cty. of Denver*, 569 F. Supp. 2d 1142, 1161 (D. Colo. 2008); *Serv. Employee Int'l Union v. City of Los Angeles*, 114 F. Supp. 2d 966 (C.D. Cal. 2000).

In the context of the COVID-19 pandemic, several courts have upheld state limitations on gatherings as valid time, place, and manner restrictions when individuals have sought to protest or hold rallies. *Antietam Battlefield KOA*, 2020 WL 2556496, at *10 (denying TRO; state delegate sought to hold rallies); *Geller v. de Blasio*, No. 20-cv-3566 (DLC), 2020 WL 2520711, at *4 (S.D.N.Y. May 18, 2020) (denying TRO; plaintiff sought to protest executive orders on

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

city streets); *Givens v. Newsom*, No. 2:20-cv-00852-JAM-CKD, 2020 WL 2307224 at *6 (E.D. Cal. May 8, 2020) (denying TRO to hold protest and rally at state capitol).

Like in these cases, Proclamation 25-20.4's limitation on gatherings is a valid "time, place, and manner" regulation because it is (1) "content-neutral"; (2) "designed to serve a substantial governmental interest"; and (3) "do[es] not unreasonably limit alternative avenues of communication." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986) (quotation marks omitted). Ms. Faust does not argue to the contrary with regard to these elements anywhere in her Second TRO, instead simply asserting that it is "difficult to imagine" that the Stay Home – Stay Healthy Order is a reasonable time, place, or manner restriction. Dkt. #29 at 4. She is incorrect.

The Stay Home – Stay Healthy Order is content neutral because it "serves purposes unrelated to the content of expression," namely to combat a pandemic. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ("The government's purpose is the controlling consideration."). The Governor did not adopt the gathering limitations because he disagrees with any of the messages conveyed at any of the events, gatherings, or activities that the Stay Home – Stay Healthy Order temporarily prohibits. *See Ward*, 491 U.S. at 791 ("The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys."). Indeed, the sheer diversity of messages at these events, gatherings, or activities—messages that undoubtedly contradict each other at times—illustrates that their content cannot be the Proclamation's target.

The Stay Home – Stay Healthy Order instead "serves purposes unrelated to the content of expression." *Ward*, 491 U.S. at 791. The purpose it serves is to prevent people from transmitting the virus to others by leaving their homes, gathering, or visiting non-essential businesses. *See, e.g.*, *Benner v. Wolf*, No. 20-cv-775, 2020 WL 2564920, at *8 (M.D. Pa. May 21, 2020) (Stay Home – Stay Healthy Order was content neutral because "[it] appl[ied] equally to all citizens of Pennsylvania and to a great number of non-life sustaining businesses

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    'regardless of message.' "). It does not target speech but, rather, the "harmful secondary effects

2    of public gathering—the spread of a novel virus for which there currently is no cure or effective

3    treatment." *Geller*, 2020 WL 2520711, at *4 (S.D.N.Y. May 18, 2020). The Stay Home – Stay

4    Healthy Order is content neutral.

5         The Stay Home – Stay Healthy Order also unquestionably serves a "substantial

6    government interest that would be achieved less effectively absent the regulation." *Ward*, 491

7    U.S. at 799 (internal quotation marks and citation omitted). Protecting public health and slowing

8    the spread of a highly contagious pandemic that has already infected nearly 20,000

9    Washingtonians and killed over 1,000 is not only a "substantial" governmental interest, but a

10   compelling one. As the *Legacy Church* court recognized in denying a TRO against New

11   Mexico's stay-home order, mitigating "a global pandemic and its local outbreak amount to a

12   compelling state interest." 2020 WL 1905586, at *40; *Legacy Church*, *Inc. v. Kunkel*, No. CIV

13   20-0327, 2020 WL 1905586, at *40 (D.N.M. Apr. 17, 2020); *see also Givens*, 2020 WL

14   2307224, at *7 (mitigating local outbreak of pandemic is compelling state interest in limiting

15   gatherings, including protests at state capitol); *Benner*, 2020 WL 2564920, at *8 ("Protecting

16   lives is among the most substantial of government interests"); *Whitlow v. California*, 203

17   F. Supp. 3d 1079, 1089-90 (S.D. Cal. 2016) (government's interest in fighting spread of

18   contagious disease is compelling; collecting cases). And the social distancing strategy that the

19   Proclamation implements, by all scientific accounts, serves that interest. *See* Dkt. #21 ¶¶ 15, 18;

20   *see, e.g. Benner*, 2020 WL 2564920, at *4 ("public health experts the world over proclaimed that

21   social distancing was the only effective way to combat its deadly effects" when state adopted

22   stay-home order); *Miller v. Thurston*, No. 5:20-CV-05070, 2020 WL 2617312, at *1 (W.D. Ark.

23   May 25, 2020) (noting that social distancing is "the current best tool to prevent uncontrolled

24   spread of that virus among the population").

25        Because slowing the spread of the virus would be achieved less effectively without the

26   Proclamation's social distancing strategy, the Proclamation is narrowly tailored. To be narrowly

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1   tailored to achieve a legitimate state interest, a regulation "need not be the least restrictive or

2   least intrusive means of doing so." *Ward*, 491 U.S. at 798. Rather, a law is narrowly tailored

3   "[s]o long as the means chosen are not substantially broader than necessary to achieve the

4   government's interest." *Id.* at 800. Preventing people from assembling is currently the best way

5   to prevent contagion, Dkt. #21 ¶ 5, so the Proclamation is narrowly tailored to meet a substantial

6   government interest. *See, e.g., Miller,* 2020 WL 2617312, at *1; *Benner,* 2020 WL 2564920 at

7   *4 (M.D. Pa. May 21, 2020) ("public health experts the world over proclaimed that social

8   distancing was the only effective way to combat its deadly effects."); *Geller,* 2020 WL 2520711,

9   at *4 ("The City has demonstrated that the scientific and medical communities believe that

10  preventing in-person gatherings is crucial to any strategy of containment."). Because COVID-19

11  spreads easily and because asymptomatic individuals may spread the virus, gatherings pose the

12  risk more people will contract the virus if someone has it. *See Antietam Battlefield KOA*,

13  2020 WL 2556496, at *11.

14      The history of the Governor's orders also indicates narrow tailoring. *See id.* (history of

15  stay-home orders shows narrow tailoring)*.* The Governor first tried other mitigation measures.

16  *See* Proclamations 20-07 to 20-09, 20-12 to 20-14. Only after these did not sufficiently address

17  the crisis did the Governor adopt the Stay Home – Stay Healthy Order and its amendments,

18  including the current Safe Start – Stay Healthy Order. This demonstrates "a gradual tailoring of

19  the prohibition based on the COVID-19 figures and how well the previous prohibitions were

20  working." *Antietam Battlefield KOA*, 2020 WL 2556496, at *11.

21      Third, the Stay Home – Stay Healthy Order does not unreasonably limit Ms. Faust and

22  others from assembling over the phone and online, which offer alternative avenues of

23  communication for any messages they may wish to share. *See Friends of Danny DeVito v. Wolf*,

24  --- A.3d ----, No. 68 MM 2020, 2020 WL 1847100 *24 (Pa. Apr. 13, 2020) (governor's closure

25  of businesses to halt spread of COVID-19 does not unconstitutionally infringe free speech

26  because it "does not in any respect prohibit operations by telephone, video-conferencing, or on-

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1   line through websites and otherwise."). *Givens*, 2020 WL 2307224 at *6 (E.D. Cal. May 8, 2020)

2   (plaintiffs who wanted to protest at state capitol "remain free to use online and other electronic

3   media to stage their rallies and make their protests."). This is a reasonable limitation to prevent

4   the spread of the virus.

5        Though it appears that Ms. Faust's assembly claim is primarily speech-based (Dkt. #3

6   at 7), her claim would also fail if this Court considers it as a claim for the right to associate for

7   expressive purposes. Infringements on that right may be justified by regulations adopted to serve

8   compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through

9   means significantly less restrictive of associational freedoms. *Roberts v. U.S. Jaycees*, 468 U.S.

10  609, 623 (1984); *see, e.g.*, *Legacy Church, Inc.*, 2020 WL 1905586, at *39 ("The right to

11  expressive association is not an absolute right and can be infringed upon if that infringement is

12  (i) unrelated to the suppression of expressive association; (ii) due to a compelling government

13  interest; and (iii) narrowly tailored.").

14       For the same reasons discussed above, the Safe Start – Stay Healthy Order does not

15  violate Ms. Faust's right to associate. Stopping the spread of a deadly virus is a compelling state

16  interest. The Stay Home – Stay Healthy Order's restriction on gatherings is not related to

17  suppressing ideas but instead serves the purpose of limiting the human-to-human interaction that

18  causes the virus to spread. And because in the absence of a vaccine, cure, or treatment, reducing

19  person-to-person transmission through community mitigation measures is the only way to

20  achieve the goal of stopping the spread of the virus, it is constitutionally permissible. *See*

21  Dkt. #21 ¶¶ 15-18; *see also Givens*, 2020 WL 2307224 at *7 (denying TRO and rejecting

22  argument that freedom of association allowed in-person protests and rallies at state capitol during

23  COVID-19 pandemic).

24

25

26

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

5. **The Stay Home – Stay Healthy Order is constitutional under *Jacobson v. Massachusetts***

Ms. Faust is unlikely to succeed on any claim based on application of traditional constitutional standards. In a state of emergency like this, however, the state's interests in its residents' health and safety are at their apex, tipping the constitutional scale in its favor. The Bill of Rights "is not a suicide pact." *Terminiello v. City of Chicago*, 337 U.S. 1, 37 (1949) (Jackson, J., dissenting). Thus, some federal courts have applied a more deferential constitutional framework in adjudicating constitutional claims arising out of COVID-19 stay-home orders. Derived from *Jacobson*, that framework provides that "a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.' " *In re Abbott*, 954 F.3d 772, 784–85 (5th Cir. 2020) (quoting *Jacobson*, 197 U.S. at 31); *accord Gish*, 2020 WL 1979970, at *4–5.

Because Ms. Faust's claims fail under the traditional First Amendment standards, it is unnecessary for this Court to apply the *Jacobson* framework. Should the Court disagree, however, and find Ms. Faust likely to prevail on one or more claims, *Jacobson* comes into play and compels denial of Ms. Faust's Second TRO. The Proclamation is an emergency measure that bears a "real or substantial relation" to the COVID-19 public health crisis and is not "beyond all question, a plain, palpable invasion of rights." *Jacobson*, 197 U.S. at 31; *see also In re Abbott*, 954 F.3d at 787 ("Faced with exponential growth of COVID-19 cases, states have . . . banned social gatherings, . . . *prohibited churches from holding public worship services*, and locked down entire cities. These measures would be constitutionally intolerable in ordinary times, but are recognized as appropriate and even necessary responses to the present crisis.") (emphasis added).

Thus, whether viewed under the traditional standards or through *Jacobson*'s lens, Ms. Faust has failed to carry her heavy burden to show that she is likely to prevail on the merits

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1   of any claim.[15] On this basis alone, her Second TRO should be denied. *See, e.g.*, *Recording*

2   *Indus. Ass'n of Am. v. Diamond Multimedia Sys., Inc.*, 180 F.3d 1072, 1081 (9th Cir. 1999)

3   (where plaintiff unlikely to prevail, court "need not consider . . . balance of hardships

4   or . . . irreparable harm").

5   **C.      Without a TRO, Ms. Faust Would Not Suffer Irreparable Harm**

6          Ms. Faust's Second TRO should also be denied because she cannot establish the

7   "irreparable harm" requirement. *See Winter*, 555 U.S. at 20 (plaintiff "must establish that . . . he

8   is likely to suffer irreparable harm."). She does not argue in her Second TRO that not being able

9   to hold the rally on June 8, 2020 would cause irreparable harm. Dkt. #29.

10         It would not. A plaintiff is not irreparably harmed where there are "ample alternative

11   sites in the immediate vicinity on which to express their First Amendment rights." *See, e.g.*, *Utah*

12   *Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp. 2d 1201, 1221–22 (D. Utah 2004), *aff'd,*

13   425 F.3d 1249 (10th Cir. 2005) (citing *Hale v. Dep't of Energy*, 806 F.2d 910, 918 (9th Cir.

14   1986) ("The First Amendment does not guarantee an optimal setting . . . at all times and

15   places.")). Like all Washingtonians, Ms. Faust remains able to participate in gatherings remotely.

16   And, given the inherently temporary duration of emergency proclamations, Ms. Faust suffers no

17   long term denial of any participation in gatherings. *See* Dkt #22 at 89 (Governor's plan for

18   phrased easing of stay-home order).

19   **D.      The Balance of Equities and Public Interest Weigh Against a TRO**

20         Finally, the balance of equities and public interest weigh strongly in the Governor's

21   favor. A potential escalation of COVID-19 cases is a significant harm. *Legacy Church, Inc.*,

22   2020 WL 1905586, at *43. Loosening the Proclamation's precautions prematurely and allowing

23   Faust (or others) to hold a large rally could cause COVID-19 outbreak to spread. *See* Dkt. #21 ¶

24

25         _____

26         [15] Ms. Faust cannot be likely to prevail on a cause of action she has not pleaded. *See, e.g.*, *Pierre v. Univ. of Dayton*, No. 3:15-CV-362, 2015 WL 8567693, at *4 (S.D. Ohio Dec. 11, 2015) ("Plaintiff is not likely to prevail on . . . claims . . . he never pleaded . . . in his complaint.").

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO. 20-cv-00599

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

18.[16] Washington's more than seven million residents have a strong interest in mitigating the virus's spread. The Proclamation provides neutral, generally applicable, and temporary measures to do so. Any gathering involving "prolonged face-to-face contact" increases the risk of community spread. Dkt. #21 ¶ 18. Ms. Faust proposes a rally of up to 2,500 people with no commitment to or ability to enforce sanitation or social distancing. This would endanger others.

Gathering is not just about one individual's freedom and willingness to put their own health at risk. While Ms. Faust and her guests may decide that their needs to assemble may warrant accepting health risk for themselves, "it is a very different matter for them to argue that members of the public should accept risks to their own lives, and those of their family members" that arise when others exercise their constitutional rights. *See First Pentecostal Church of Holly Springs*, 2020 WL 1978381, at *2 (free exercise case). During this public health emergency, when the Governor must establish uniform standards to protect our state, self-regulation—where "every citizen . . . become[s] a law unto himself"— is neither a workable nor a responsible approach. *Employment Div. Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990) (quotation marks and citation omitted).

## IV.    CONCLUSION

The Defendants respectfully request that the Court deny Ms. Faust's Second Motion for Temporary Restraining Order.

---

[16] The current protests across the country raise the possibility of a resurgence in COVID-19 cases. *See, e.g.,* Will Protests Set Off a Second Viral Wave? https://www.nytimes.com/2020/05/31/health/protests-coronavirus.html

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1

DATED this 4th day of June 2020.

2

ROBERT W. FERGUSON
Attorney General

3

4

*/s/Paul M. Weideman*
PAUL M. WEIDEMAN, WSBA #42254
Deputy Solicitor General
ZACHARY PEKELIS JONES, WSBA #44557
Assistant Attorney General
JEFFREY T. EVEN, WSBA #20367
Deputy Solicitor General
paul.weideman@atg.wa.gov
zach.jones@atg.wa.gov
jeffrey.even@atg.wa.gov
*Attorneys for Defendants*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1

## **<u>DECLARATION OF SERVICE</u>**

2

I hereby declare that on this day I caused the foregoing document to be electronically

3

filed with the Clerk of the Court using the Court's CM/ECF System which will serve a copy of

4

this document upon all counsel of record.

5

DATED this 4th day of June, 2020, at Seattle, Washington.

6

7

*/s/Paul M. Weideman*
PAUL M. WEIDEMAN, WSBA #42254
Deputy Solicitor General

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S RESPONSE TO
MOTION FOR TEMPORARY
RESTRAINING ORDER
NO.  20-cv-00599

26

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744